Good morning, Gerald Ruder on behalf of the appellant, Mr. Jenerette Dixon. Your Honor, this case initially came to this court on a brief that I submitted. The court, however, asked that there be a fully brief on the issue of speedy trial, and I'm more than happy to do that. I did do that. Your Honor, it's my understanding that the Speedy Trial Act is kind of divided into two sections. There's the question of from the time of arrest until the time of indictment, has there been a denial of one's right to a speedy trial? And there's also a time after indictment until the time of trial under section 3161 in order for the court to determine whether or not a person has been denied the right to a speedy trial. morning, I would like to spend my time discussing the time from the arrest of Mr. Dixon until the indictment of Mr. Dixon. I will not concede, Your Honor, but I will simply submit on the brief as to the denial post-indictment. That's the better argument, the 30-day period pre-indictment. And Your Honor, and I appreciate that. So Your Honor, Mr. Dixon is arrested on July 21st of 2010. He's indicted on September the 9th of 2010. By anyone's calculation, that, of course, would exceed the 30-day rule, which is set forth in the statute itself under section 3161 of Title 18. It's our position, Your Honor, that because that 30-day period was exceeded, the indictment should in fact be dismissed. Your Honor, what had happened? First, what happened on August the 2nd, when Rybrock's letter was filed requesting a preliminary hearing be continued for 60 days. Yes. Until September 22, 2010, in order to allow the parties to discuss a reasonable basis for settling the case. And Judge Hamilton, I believe that is the heart of our argument. The argument is as follows. Rule 5.1c says that the magistrate judge must hold the preliminary hearing within a reasonable time, but not to exceed 14 days. So when Mr. Dixon had his detention hearing, I think around July the 24th, the magistrate judge, in fact, did set a preliminary hearing within a timely fashion within that 14-day period. So then what happens is, as you just pointed out, Judge Hamilton, a letter is sent from Mr. Dixon's counsel, and you just read part of it. And what he indicated, Your Honor, was that on behalf of his client, he was waiving his client's right to a preliminary hearing. And immediately thereafter, Judge Hamilton, there became a lot of angst between Mr. Dixon and his counsel. Mr. Dixon did not know, according to the record, that his client had waived his right. I shouldn't say waived it totally, but he continued that preliminary hearing date. We know that for a couple of reasons. Number one, the letter that his counsel wrote to the court was not carbon-copied to Mr. Dixon. It was actually carbon-copied to the prosecutors. And more importantly, you all now have read the transcript of what we're calling up in Maryland, at least, an attorney inquiry hearing. And at that hearing, where Mr. Dixon told Judge Grim his version of the events, and where counsel for Mr. Dixon told his version of the events, the record is very clear that Mr. Dixon immediately asserted his right to a speedy trial and told the magistrate judge that he had not given permission to his counsel to have continued that preliminary hearing. And when his counsel was... That came after the fact. Are you saying they could simply nullify the effect of that letter? Your Honor, I am saying this. I'm saying when this court examines Rule 5.1, that Rule 5.1 was not complied with. And so, in the first instance, I'm urging the court to find that a defense counsel does not have the absolute right to bind his client on such an important matter as the waiver or the continuous preliminary hearing. What date did this letter discussion take place with the rule? And then, an attorney inquiry hearing was held on September the 8th, which happened to be the same day the indictment came down. It was sealed, I think, at the time, but at the same time. I thought the indictment came down on September the 9th. Well, it could have been the 9th. It became public, Your Honor. Maybe it was not sealed. It came down the 9th. But on about that same date is when that attorney inquiry hearing took place. And the fact is that Mr. Dixon said then he had not authorized his lawyer to do anything in terms of waiving or continuing his right to a hearing. I don't think the letter should be construed as a waiver. The letter was... A continuance. Was the request for a continuance, which I would think would be within the range of He's basically saying, I'd like a continuance if we can explore getting rid of this case. And he does that. And it turns out the client didn't like that later, but that doesn't make the letter illegitimate. Your Honor, I'm suggesting to the court that it might because of a fine reading of Rule 5.1. And this is what... Hasn't the Hopkins case disposed of that? Well, Your Honor, Hopkins certainly speaks of that, but it didn't make the arguments that I'm making in terms of a violation of Rule 5.1. I think Hopkins more or less addresses the fact that a lawyer might have the right to do what, in this case, his trial counsel did. But I still think it has to be in conformity with... Were there ever any pre-indictment negotiations for resolving the case? I am aware of absolutely none. Were you counsel... You weren't counsel below though. That's correct. And is there anything in the record that tells us that one way or the other? No. There's not at all. Your Honor, Rule... Let me first go to Section 3060 of Title 18. And it notes here in Subsection B that it says, except as provided by Subsection C of this section or unless the arrested person... Unless the arrested person waives the preliminary examination. But that's... Not a waiver. This was a letter of continuance, a very innocent act, a very often prudent act, consistent with good representation. He's asked for a continuance so he can explore getting rid of the case. Yes. Now that, by operation of law, has certain effects. But at that point in time, there's no indication that the client had said, I want to go to trial immediately. I don't want any postponements or motions. I want the 30 days to run. There's no indication of that. This is just an ordinary letter requesting a continuance. And the judge approved it 60 days. We hear for the first time that it's a problem at September 9, when they're before the court. But up until that point in time, I don't understand why we can't accept the continuance as a stop in the clock. Your Honor, you shouldn't do it for three reasons. Number one is because I think it is such a critical stage of the proceedings that there should be an affirmative showing that a defendant has waived that very important right. But it's not a waiver. Your Honor, or... You keep making it a waiver. How about a continuance? Or a continuance because under... There's not a continuance to talk. That, Your Honor, is section 3060 subsection C. And I recognize that a person can ask that the permanent hearing be also continued beyond a certain date. The truth of the matter is I'm not even sure your client can waive it. It's really in the public interest to have the speedy trial. And we have a lot of indications on that. It doesn't turn on that. It turns on whether the 30 days runs and whether there was legitimate conduct that told the running of the clock during that period. And it seems to me there's nothing to suggest that letter was in bad faith. Or was anything other than what it indicated, which was we want a continuance to talk. And the judge says, fine. And if we accept that, then there's no problem in this case then, right? If we were to accept the letter as legitimate. No. Because I want to get to my rule 5.1c argument, Your Honor. Well, Bill, before you get to that... Yes, sir. I thought I asked you and you didn't make it clear. First of all, was there an order entered granting the 60-day extension? No, sir. Just from the bench? All right. Not even, Your Honor... There was a note in marginal order, wasn't there? Your Honor, I don't think there's anything in the record about that. A letter was sent. A letter was sent by counsel asking for a continuance. And nothing happened until the attorney inquiry hearing occurred on September the 9th. And he was indicted on the same day. That's not my understanding. My understanding was that the request was granted promptly after the letter was received. Your Honor, I stand to be corrected. I do not recall seeing in the docket entries where there was a notation that it had been granted, that that request for a continuance had been granted. And if it had, Your Honor, it still... Notation was on the motion, wasn't it? Was on the letter or something? I did not, Your Honor. I did not see that. And I have the... Well, where is your understanding that there was a notation that the 60-day extension had been granted? My understanding is there was no notation of any type. It just... What happened, Your Honor, he got indicted before the 60 days had transpired. So it became a moot issue. So there was no... And that's part of my, if you will, complaint, Judge Hamilton, is I think that if Rule 5.1 is adhered to strictly, what should happen is that there should be good cause shown. Well, I admit that the letter attempted to show good cause, the good cause being we're going to try to resolve this pretrial. How do you handle our Keith case where we said a defendant should be prevented from using the Speedy Trial Act as a sword and a shield, sandbagging the court and the government by agreeing to a continuance and then later urging dismissal using the time covered by the continuance? Because, Your Honor, this defendant never agreed. And Judge Niemeyer, Your Honor... Just a minute. Let me pause it. We have two different propositions. You can address the letter and attack it. But if we accept the letter as a proper conduct and part of the attorney on behalf of the defendant... Yes. ...then you have the Keith case, which would preclude your challenging that time on the basis you're talking about. As to the letter, yes. But as to Rule 5.1c, I think the answer is no. The rule, again, Judge Niemeyer says that with the defendant's consent and upon a showing of good cause, this court is saying, well, if the letter... If we can take notice that the fact of that letter came from his lawyer and it should be accepted as such, then there has to be a showing of good cause. If there's no hearing before a court or there's no order signed indicating that a judge has found good cause, then there's no good cause. Just because a letter comes from one of us defense counsels saying something doesn't make it so. Clearly, Mr. Ritzberg did what he thought was correct. He did what he thought he should do. But there's no showing on the record that anybody ruled on it. Well, let's assume that you're right. I'm not sure that that gives relief to your client because later in the timeline, he sends a letter on his own to the district court. If a lawyer had done that, it would be called a motion to remove or substitute counsel. So when that letter comes out on August the 23rd, why wouldn't that have stopped the clock? Because I don't recall any argument in your brief that challenges the efficacy of that letter. Your Honor, it does not. In fact, one might argue that the clock may be told as of the date of that letter. Well, if that's true. I'm just saying it may be argued, Judge Agee. Wait a minute. If that's correct, and I would assume the opposing counsel will say that it is, then you don't get to the 30 days. You do not get to the 30 days. Okay. And Your Honor, in relation to Judge Diemeier asking, well, how is it that the appellant should get the benefit of a after the fact objection? The answer, Judge Diemeier, is I think that this gentleman made his objection as soon as he found out about it. I understand, but there are certain conduct that attorneys take in cases that are just not that critical. And to tell the court, I'd like to have a little time to discuss this with my client and with the opposing, with the U.S. attorney to see if we can get rid of this case, and sends a letter to the court, to Magistrate Grimm, Magistrate Judge Grimm, that said, we want this postponement for 60 days, which I understand was granted, but you say it wasn't? Your Honor, I'm telling, I'm saying to this court, I'm not aware of anything in the record or documentaries which indicates that anybody- It was scheduled earlier. It had to have been postponed by somebody, right? Yes, it certainly was pulled off the docket because it didn't happen. That is for sure. Well, even if we accept your argument as to the August 2 letter, what about Judge Agee's question about this letter that your client wrote himself dated August 23? Your Honor, that's simply his assertion of his right to a speedy trial. That what? It's his, that is his- That's for a new lawyer. And he did so, Your Honor, because what his lawyer had done. He did so because he had not authorized the continuance of the preliminary hearing. Right, but for our purposes, I don't think that makes any difference. As I read this, which I think you admitted before you don't challenge, this is a motion to remove counsel. And that motion stopped the clock until there was a hearing which was coterminous with the other hearings in the indictment. Yes, and Your Honor, knowing that that conundrum exists is why I urge this court to find that a preliminary hearing is not a small deal. The whole idea of it is to make sure that a person does not languish in jail for any degree of time to make sure that probable cause exists for a person to be held. That's the whole idea behind it. Mr. Dixon made it very clear in that letter, and I might add dozens of others throughout my representation of him, when I became involved, always asserted his rights early and often. And it seems to me that when the court examines the attorney inquiry hearing that was held on the 9th of September, we'd all have to agree that the only complaint that Mr. Dixon raised at that point was the fact that his lawyer had not told him that he was going to waive his right to a preliminary hearing. So he had done all that he could possibly do, which is bring it to the court's attention. And he ought not, in my opinion, Judge Agee, to be prejudiced by the fact that he had to do something to bring it to somebody's attention, and that's precisely what he did. All right. Thank you. We'll hear from you on rebuttal. Mr. Warwick. Thank you, Your Honor. Good morning, and may it please the court. I am James Warwick. I am the assistant U.S. attorney who investigated, indicted, and then tried this matter. First of all, I'd like to clarify a factual point that was referenced in Mr. Rueda's argument. The letter of July 28th by Mr. Risberg was dated the 28th, was docketed by the magistrate court on August 2nd, and was approved on August 2nd. The docket entries in the docket sheet for the magistrate court reflects... Is that in our appendix? I apologize for the oversight. It was not placed in the joint appendix, but I will make a motion to further supplement the appendix to include this docket sheet. You can do that, if you'll do that within a week, and give a copy to your colleague. I will do that. I will do that. Docket entry 11 references, again, August 2nd of 2010, motion to continue preliminary hearing for 60 days up to September 22nd, and then docket entry 12, also dated August 2nd, order granting number 11, motion to continue preliminary hearing for 60 days. So the court did officially act on Mr. Risberg's letter. It construed it as a motion to continue and granted that letter. The court also had questioned Mr. Rutter about Mr. Dixon's pro se letter to the court, dated August 23rd. And I submit that the questions that Justice, Judge Agee asked are right on point with regard to that letter, because that should be construed as a motion, because the letter generated action on behalf of the magistrate judge. So therefore, it was docketed appropriately as a motion. It was considered a motion, and it was acted on. There was a hearing held. There was a finding made, and counsel were relieved. I think the most important thing to consider here, in terms of any motion for a continuance, is what the equities are, and there are certainly equities in this case. Equities in favor of the government would include knowledge that three people were involved in a very serious armed robbery, a takeover robbery of a bank. We had one person in custody. We're looking to get the other two. So there's an incentive on the part of the government to seek cooperation in order to get the other two individuals off the street. From the standpoint of the defendant and what Mr. Risberg was trying to explore, the equities included the fact that he would try to negotiate a disposition short of indictment on behalf of his client that would possibly eliminate the seven-year consecutive sentence for brandishing a firearm during the course of a robbery. That's something that any defense counsel would look to negotiate. Were there any negotiations between Mr. Dixon's attorney and yourself? Yes, there was. The evidence of that is contained in the face of Mr. Risberg's letter, in which he informs the court that the reason for the request in delaying the preliminary hearing was to engage in negotiations with the government. And one of the other equities... I understand what the letter said, but where in the record is there any evidence that these negotiations took place? Other than the fact of the letter, there is nothing in the record. There were negotiations. Early discovery was turned over. And that's one of the benefits to a defendant, is that in order to prompt quick cooperation so the government could investigate the other two accomplices, the government provided, and I did provide, bank photographs and other discovery within a few days of the detention hearing so that Mr. Risberg could evaluate that evidence, present that evidence to his client, and determine if Mr. Dixon was, in fact, willing to cooperate in exchange for possible leniency. So those were the equities that flow on either side with regard to a continuance of this nature. I submit to the court that... I'm not sure I can understand that that constituted negotiations. Well, the quid pro quo that... It takes two parties to negotiate something. Exactly. And Mr. Risberg discussed with me the possible disposition short of indictment if it involved substantial assistance to the government. And that was the reason for delaying the preliminary hearing, to allow him... Does the record reflect any of that? The record below does not reflect anything other than the letter of Mr. Risberg. Most of... As a practical matter, Your Honor, most of the negotiations concerning cooperation does not take place in the court docket for obvious reasons. You have security concerns, and the negotiations between counsel are confidential and shared only with the client agency, the U.S. attorney, and the defendant himself or herself. With regard to the letter of Mr. Risberg, I submit that... And the Supreme Court has held, and there are... And also, there are two cases that I'd like to bring to the court's attention and submit in a 28J letter, and that is the First Circuit this year in the United States versus Gates held that counsel has the power to seek continuances without first obtaining the permission of a client. And the Supreme Court in 2000, New York versus Hill, within the context of an interstate agreement on detainer argument, held that counsel can waive speedy trial interests of a client, and that absent demonstration of ineffectiveness of counsel, that counsel's word on that matter is the last word. And I submit that that's the appropriate standard. This court has held similarly in Hopkins, and I think that the precedent from the Supreme Court and this court should not be disturbed. Mr. Risberg was and is a very experienced criminal defense attorney. I have known him for probably 20 years. He's practiced in Baltimore during that time, and he's respected. He's diligent. And in writing that letter to the court on July 28th, he had Mr. Dixon's best interest in mind. Mr. Dixon, it's not such a critical stage of the proceeding that he needs to, or a defendant needs to, ratify every act done by counsel. If that was your position, then the granting of the 60 days, of course, ran beyond the indictment date of September 9th. That's correct, when it became apparent to the government, because the government was prepared. It had had a complaint signed on July 16th. That was the basis for the arrest. The government could have proceeded quickly with an indictment. It was asked to forbear on that indictment for the purposes of negotiations. The government agreed to do that. And then when informed by Judge Grimm's, then Magistrate Grimm's chambers, that there would be a hearing on a motion to relieve counsel on September 9th, the government sought and obtained an indictment in an abundance of caution. A superseding indictment was thereafter returned on the 22nd. And really, the matter of counsel was not finally resolved until, I think it was September 29th, when Mr. Reuter was appointed as successor counsel to Mr. Risberg. Okay. If the Court has any other questions, I'll be happy to address them. Thank you, Mr. Warwick. Thank you. All right. Mr. Reuter. Thank you, Your Honor. Judge Hamilton, in relation to your question, there was this very lengthy attorney inquiry hearing on September the 8th. The Court will notice that there's no discussions. Is it the 8th or the 9th? Let's get that straight. I thought it was the 9th. Your Honor, my apologies. I have it right here in front of me. Well, I just think we ought to use the right date. I think you're absolutely right. It is September the 9th. Mr. Dixon had written his letter on August the 23rd. As soon as he found out that his counsel had continued his right to a preliminary hearing. Rule 5.1c, I also think should be noted this. The way I read it, it seems, Your Honor, that all that Mr. Risberg should have had the right to have done was to ask for a continuance of 14 days. That's by a clear reading of subsection D. He can't ask for 60 days or 90 days or 120 days. It defeats the whole purpose of the Speedy Trial Act. Now you're saying that Judge Grimm erred? Yes. That's the... Well, how do you handle the Keith case? You know, you can't go and ask a court to do something and then come back and say the court was in error in doing so. That's what the Keith says. It says you can't axe a shield and a sword. I think that's a very good proposition. We just can't gotcha the court all the time. It seems to me if it's in the interest of the defendant to discuss with the U.S. attorney a way to get out of this case and get preliminary discovery and they go to the court together basically and ask for 60 days and the court enters an order granting 60 days and now you're saying it was error for you to have gone to the court and asked for that? I'm saying, Your Honor, that the way in which it was asked and the way in which it was granted, it's clearly in violation of Rule 5.1. You should only be able to get... Why shouldn't we hold you to your letter? You asked for, not you personally, but you asked for a 60 extension. You wanted to try to get out of this case. You got agreement from the U.S. attorney. The two of you go to the magistrate judge. The magistrate judge says fine, I'm going to postpone it 60 days and now your client comes up later and says hold it. Speedy Trial Act. This is after the fact. Speedy Trial Act violation. Everything that was done is wrong and Keith says basically you can't invite the court to make an error and then take the benefit of it. And in this case, the appellant did not invite error. The MJ should have marked it continuance granted for 14 days because the rule doesn't allow there to be 30 or 60 or 90 or any number. Why didn't you just agree to 14 days if that's what you think was an error? In other words, you're charged with you can't ask for 60 days and then come and say I shouldn't have asked for 60 days. Slap my hands. The devil made me do it. I mean, how do we handle that? Your Honor, it's our position that this Speedy Trial Act right trumps what a lawyer, prosecutor, or judge may do. That rule should be filed and it should be followed in violent  That's the second part of our argument as well. Judge Niemeyer didn't use the words, but are you familiar with the invited error doctrine? I am, Your Honor. Which applies. Which is what Judge Niemeyer is suggesting, Your Honor. And I do understand that. Well, as Judge Niemeyer explained, if the client or if an individual asks the court to do something and the court does it and then later on he wants to say well that's error. Yes. I really didn't want that. That's the invited error doctrine. It is, Your Honor. I circle back to my initial argument which is under the title 18 the arrested person is the one who has a right to waive or continue a preliminary hearing. The arrested person. Do you have a case that the attorney is without authority to ask for a continuance? I think it's just the opposite. I do not have such a case, Your Honor. Okay. Well, I noticed that you were appointed. When did you take over this case? Your Honor, around September 29th or September 30th when the superseding indictment came down, I believe. I asked you that because I didn't want to make this comment without knowing when you were appointed. But looking at this record, one could construe that Mr. Dixon was really trying to massage the record to get the Speedy Trial Act to run in any way that he could to avoid being indicted which happened on September 9th. Your Honor, with all the... I'm not relating that to anything that you did. Yes. Your Honor, with all the interesting time that I've had with the appellant and it has been a very interesting representation of this gentleman, I think that this court cannot get around the fact that as soon as he found out, as soon as he found out, he immediately objected. And so I would take a question, Your Honor, the motives of the appellant. I think the appellant wanted his day in court as fast as he could get it. Mr. Reuter, I understand you're court-appointed here. I am, Your Honor. I want to acknowledge your service in this case and... It's always my pleasure to be here, Judge. Yeah, and we'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, G. Steven Agee, Clyde H. Hamilton